UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>  vs.<br><br>CENTRAL PORTFOLIO CONTROL INC., ABSOLUTE RESOLUTIONS CORPORATION, and ABSOLUTE RESOLUTIONS INVESTMENTS LLC,<br><br>        Defendants. | Case No.: 18-cv-787<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Defendant Central Portfolio Control, Inc. ("CPC") is a foreign business corporation with its principal offices located at 10249 Yellow Circle Drive, Suite 200, Minnetonka, Minnesota 55343.

6. CPC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. CPC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. CPC is a "debt collector" as defined in 15 U.S.C. § 1692a.

9. Defendant Absolute Resolutions Corporation is a foreign business corporation with its principal place of business located at 1455 Frazee Road, Suite 550, San Diego, California 92108.

10. Upon information and belief, the entity named "Absolute Resolutions Investments, LLC" is a wholly-owned subsidiary of Absolute Resolutions Corporation. Upon information and belief, Absolute Resolutions Corporation acts as its manager, and the companies share offices at 1455 Frazee Road, Suite 550, San Diego, California 92108. Hereafter, both entities will be referred to collectively as "ARC."

11. ARC is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family, or household purposes.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6)

(emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

14. The primary purpose of ARC's business, and ARC's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

15. ARC's website states:

## Receivables Management Solutions

Founded in 2001, Absolute Resolutions Corporation (ARC) is a receivables management firm exclusively focused on acquiring debt portfolios directly from creditors as a part of the debt recovery lifecycle.

https://absoluteresolutions.com/receivables/

16. Upon information and belief, the only service ARC provides is as a debt owner.

17. Upon information and belief, ARC has no employees.

18. Upon information and belief, ARC, or its affiliated entities, has been the named plaintiff in more than five hundred (500) consumer debt collection lawsuits filed in Wisconsin.

19. Upon information and belief, all proceeds from the debt collection claims instituted on ARC's behalf go to ARC.

20. Upon information and belief, instructions have been sent to credit bureaus in ARC, or its affiliates', names concerning more than 1,000 distinct consumer debt accounts of Wisconsin residents.

21. Upon information and belief, after a judgment is entered in ARC's, or one of its affiliates', name, ARC sometimes attempts to obtain satisfaction of that judgment in whole or in part through wage garnishment.

22. Upon information and belief, ARC's business focuses principally or entirely on acquiring and servicing non-performing and semi-performing loans.

23. Upon information and belief, ARC's business is sustained by collection of consumer debts and is unaided by any other significant sources of revenue.

24. ARC holds a collection agency license that was issued by the State of Illinois.

25. ARC is a debt collector as defined in 15 U.S.C. § 1692a. *See Vanuhss v. Rausch, Sturm, Israel, Enerson & Hornik*, 2017 U.S. Dist. LEXIS 57335, at *31 (W.D. Wis. Apr. 14, 2017) (denying ARC's motion for summary judgment on plaintiff's claim under 15 U.S.C. § 1692g(b)).

4

**FACTS**

26. On or about April 11, 2018, CPC mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to ARC. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

27. Upon information and belief, the alleged debt that CPC was attempting to collect was incurred by use of a personal credit card account, used only for personal, family or household purposes.

28. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by CPC to attempt to collect alleged debts.

30. Upon information and belief, <u>Exhibit A</u> is the first written communication Plaintiff received from CPC.

31. <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgement or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

32. <u>Exhibit A</u> also states:



Exhibit A.

33. The body in Exhibit A states:

The above referenced current creditor has referred your account to our office.

Exhibit A.

34. Exhibit A states that the "Current Creditor" is ARC.

35. Exhibit A also states that the "Original Creditor" is "MASTERCARD."

36. Upon information and belief, "Mastercard" did not issue the credit card associated with the alleged debt referenced in Exhibit A.

37. Upon information and belief, Mastercard does not issue its own credit cards.

38. Instead, Mastercard operates a credit card network, and partners with banks and other financial institutions, which actually issue and own the accounts and receivables associated with a consumer's credit card account. *See, United States v. Am. Express Co.*, 838 F.3d 179, 188 (2d Cir. 2016) ("Visa and MasterCard operate cooperative or "open-loop" systems that involve as many as five different actors, including the network, cardholder, merchant, issuer, and acquirer. . . . The issuer and acquirer are typically banks.").

39. Upon information and belief, the debt referenced in Exhibit A was not issued and was never owned by Mastercard.

40. Upon information and belief, Mastercard is not the original creditor of the debt referenced in Exhibit A. *See, e.g., Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th

6

Cir. 2009) (the original creditor of the account was the bank that issued the credit card); *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) (same) (emphasis added).

41. The representation that the "Original Creditor" is "MASTERCARD" is false, deceptive, misleading, and confusing to the unsophisticated consumer.

42. The unsophisticated consumer would be unable to determine who actually issued the account associated with the debt that Defendants were attempting to collect with Exhibit A.

43. The name of the original creditor is a material aspect of a debt. *E.g., Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1121 (9th Cir. 2014) ("in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way."), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014); *Winslow v. Forster & Garbus, LLP*, 2017 U.S. Dist. LEXIS 205113, at *28 (E.D.N.Y. Dec. 13, 2017); *Heathman v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 98742, at *13 (S.D. Calif. July 13, 2013) ("because Defendant's failure to identify Chase, the original creditor, is both deceptive and material under the least sophisticated consumer standard, it constitutes a violation of § 1692e."); *Scheunemann v. J.C. Christensen & Assocs.*, 802 F. Supp. 2d 981, 986 (E.D. Wis. July 18, 2011).

44. Moreover, it is not uncommon for a debt collector to interchangeably identify a "merchant" or "servicer" as the "Original Creditor" and the actual issuer of the credit card as the "Current Creditor." *See, e.g., Hall v. Global Credit & Collection Corp.*, 2016 U.S. Dist. LEXIS 111906, at *4 (M.D. Fla. Aug. 23, 2016) (collection letter identified merchant as original creditor); *Wong v. Phelan Hallinan & Diamond, PC*, 2015 U.S. Dist. LEXIS 82986, at *14-16 (D.N.J. June 25, 2015) (collection letter incorrectly identified loan servicer as creditor to whom

7

the debt was owed); *Bourff v. Rublin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012) (plaintiff stated FDCPA claim that defendant law firm falsely identified a mortgage servicer as a creditor); *Smith v. Simm Assocs.*, 2018 U.S. Dist. LEXIS 5638, at *10-11 (E.D. Wis. Jan. 12, 2018) (collection letter identified issuing bank as the original creditor and merchant as the "client").

45. The confusion and misleading effect is compounded because some major credit card networks, *e.g.,* American Express, do, in fact, own and issue credit card accounts. *See United States v. Am. Express Co.*, 838 F.3d 179, 188 (2d Cir. 2016) ("In contrast to Visa and Mastercard, Amex is a proprietary network that operates a 'closed-loop' system. Within this closed loop, Amex acts not only as the middleman network but also as the issuer and acquirer for the vast majority of transactions involving its cards.").

46. The false representation that "MASTERCARD" is the original creditor is further confusing and misleading to the consumer because it suggests that the debt has not actually been assigned to a third party, and that ARC may have been the issuer in the first place.

47. The representation that "MASTERCARD" is the original creditor confuses the consumer into believing the debt has not been sold, which has important implications for settling the account because debt buyers often purchase accounts for pennies on the dollar. *See, e.g., Bartlett v. Portfolio Recovery Assocs., LLC*, 91 A.3d 1127, 1132 (Md. Ct. App. 2014) ("A 'debt buyer' can buy these 'charged-off' debts from the original creditor at a low price, often mere pennies on the dollar, and often in bulk, and then go about collecting the account balance from the debtor.").

48. Plaintiff was confused and misled by Exhibit A.

49. The unsophisticated consumer would be confused and misled by Exhibit A.

### The FDCPA

50. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS

9

139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

51.  Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

10

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

52. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

53. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

54. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692g(a) requires debt collectors to provide certain information and notices to consumers within five days of the initial contact with the consumer:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> . . .
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

56. 15 U.S.C. § 1692g(b) specifically prohibits communication during the thirty-day period that "overshadow[s] or [is] inconsistent with the disclosure of the consumer's right to . . . request the name and address of the original creditor."

57. Providing the wrong original creditor inherently overshadows and conflicts with the consumer's right to request the name and address of the original creditor. The

11

unsophisticated consumer would assume that the debt collector would provide information about "MASTERCARD" rather than information about the actual original creditor, the issuer of the credit card account. *See, e.g., Muha*, 558 F.3d at 629.

58. Overshadowing a required disclosure is a *per se* violation of the FDCPA. *Janetos*, 825 F.3d at 324 ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

59. Moreover, for purposes of Plaintiff's claims under 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10), Defendant's omission is a material violation of the FDCPA.

60. Misrepresentation of the original creditor's identity is a misrepresentation of the character and legal status of the debt. 15 U.S.C. § 1692e(2)(A). *Tourgeman v. Collins Fin. Servs.*, 755 F.3d at 1121.

## COUNT I – FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. <u>Exhibit A</u> states that the "Original Creditor" is "MASTERCARD."

63. Upon information and belief, Mastercard did not issue the account referenced in <u>Exhibit A</u> and was never the creditor of the account.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692g(a)(5), 1692g(b).

## CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of a Class.

66. The Class consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter, (c) stating that ARC is the "current creditor" of the debt, (d) and

also stating that "MASTERCARD" is the "original creditor" of the debt, (e) where the debt was incurred for personal, family or household purposes, (f) and the letter was mailed between May 23, 2017 and May 23, 2018, inclusive, (g) and was not returned by the postal service.

67. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

68. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the FDCPA.

69. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

70. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

71. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

### JURY DEMAND

72. Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

13

Case 2:18-cv-00787-WED    Filed 05/23/18    Page 13 of 14    Document 1

(d)     such other or further relief as the Court deems proper.

Dated:  May 23, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com